UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHEENA J.,[1]
on behalf of minor child, S.M.,

    Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:21-cv-26

Black, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Sheena J. (hereinafter "Plaintiff") filed this Social Security appeal in order to challenge the Defendant's finding that her minor child (hereinafter "SM") is not disabled. *See* 42 U.S.C. §405(g). For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.    Background**

Plaintiff filed an application for supplemental security income ("SSI") on behalf of her minor child, SM, on December 6, 2017. In the application, Plaintiff alleged that SM was disabled based upon "slow development" and "low vision" and that her disability commenced when she was approximately nine and a half years old, on November 1, 2016. (Tr. 165). After the application for benefits was denied both on initial review and on reconsideration, Plaintiff filed a written request for an evidentiary hearing before an administrative law judge ("ALJ"). On October 7, 2019, ALJ Lloyd E. Hubler, III held a

---

[1]Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

hearing at which Plaintiff appeared pro se and gave testimony along with SM. (Tr. 26-55).

SM was a school age child (6-12) at the alleged onset of her disability, but was classified as an adolescent (12-18) in the seventh grade by the time of the hearing. (Tr. 12). On March 4, 2020, the ALJ issued an adverse written decision. (Tr. 11-20). The ALJ found that SM has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), fracture of the left ankle, and myopia. (Tr. 12). However, none of those impairments alone or in combination meets or medically equals one of the listed impairments in the Listings of Impairments in 20 CFR, Part 404, Subpart P, Appendix I. (*Id.*) The ALJ further determined that SM does not have an impairment or combination of impairments that "functionally equals" the severity of the listings. (Tr. 14). Based upon that determination, the ALJ concluded that SM was not disabled. (Tr. 20). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Defendant's final determination.

Plaintiff timely appealed the Commissioner's adverse decision to this Court. Liberally construing Plaintiff's Statement of Errors in this case, she challenges the ALJ's finding that SM does not "functionally equal" any listing.

**II. Disability Framework and Standard of Review**

To be eligible for benefits, a child must have a medically determinable impairment which results in marked and severe functional limitations and which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §1382c(a)(3)(C)(i). A claimant can either meet or medically equal a Listing, or she can "functionally equal" a Listing. To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1)

2

acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove that SM has an impairment that is functionally equivalent to a listing, Plaintiff must show that SM's impairments resulted in "marked" limitations in at least two of the six domains, or "extreme" limitations in at least one domain. 20 C.F.R. §416.926a.

In reviewing the Commissioner's denial of benefits, the court's inquiry is to determine whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. ... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted); *see also, generally*, *Biestek v. Berryhill*, 139 S. Ct. 1148,1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

### III. Analysis

**A. Development of the Record in light of Plaintiff's Pro Se Status**

Prior to turning to the substantial evidence analysis in this case, the undersigned briefly discusses the fact that Plaintiff appeared before the ALJ pro se, as she does before this Court. An ALJ has a "special duty" to fully develop the record of a claimant who appears without representation, and the reviewing court must scrutinize the record with care in such cases to ensure that the heightened duty was fulfilled. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). On the record presented, the ALJ fully complied with that duty. The ALJ notified Plaintiff of her right to representation, and Plaintiff clearly and repeatedly expressed her desire to proceed without counsel. (Tr. 29-30). Plaintiff reiterated that desire both verbally and in writing. (*Id.*) The ALJ took extra care to ensure that the record was complete in this case, obtaining all relevant school records and medical records, as well as the results of a psychological consultative exam.

The undersigned takes judicial notice that Plaintiff is well versed in social security procedures including her right to obtain representation. Plaintiff proceeded through counsel on her own disability claim in a prior judicial appeal filed in this Court, in which she won remand to the agency for further review based upon the failure of the ALJ to provide "good reasons" for rejecting the opinion of her treating psychiatrist. *See*, *e.g.*, *Sheena J. v. Commissioner*, Case No. 1:13-cv-572 (Order filed March 19, 2015, adopting R&R and directing sentence four remand).[2] Since that time, Plaintiff has successfully complied with straightforward procedural requirements not only in this judicial appeal, but in a prior appeal regarding the denial of disability benefits for a

---

[2] Plaintiff asserts that she was awarded disability benefits following remand.

4

different child, RB. *See Sheena J. v. Commissioner*, Case No. 1:20-cv-339 (Order filed April 26, 2022, adopting R&R and affirming Commissioner's decision).

### B. Plaintiff's Assertions of Error

Notwithstanding Plaintiff's compliance with procedural requirements, the Commissioner argues that Plaintiff's Statement of Errors fails to state any legally cognizable arguments, and that as a result, Plaintiff has waived any assertion of error at all. To a large degree, that is true. *See Doolittle v. Com'r of Soc. Sec.*, 2019 WL 6464019 at *2 (6th Cir. Sept. 4, 2019) (pro se plaintiff waived "any possible challenge to the ALJ's ruling" where she made "no specific arguments" to support her assertions and failed to "refer to any part of the record or cite any authority."); *Tully v. Com'r of Soc. Sec.*, 2020 WL 3055749 at *6 (S.D. Ohio June 9, 2020) (same). Still, the undersigned construes the Statement as generally challenging whether substantial evidence supports the ALJ's findings. Relevant to that construed challenge,[3] Plaintiff argues: (1) SM's mental health "symptoms got worse not better"; (2) SM's vision entitles her to disability; (3) SM's "five or six diagnos[e]s," including ADHD, bipolar disorder, catatonic disorder, and "primary [illegible] and reading disorder," should entitle her to benefits; (3) that Plaintiff received a letter dated January 2016 awarding benefits; and (4) that because Plaintiff has a disability herself, SM also should qualify for benefits. Because none of Plaintiff's assertions entitle SM to benefits and the ALJ's decision is clearly supported by substantial evidence, the non-disability decision should be affirmed.

---

[3]The Statement of Errors contains 20 numbered sentences. However, Plaintiff primarily complains about the care provided to SM by past medical providers, or urges this Court to reconsider the adverse decision on the basis that the ALJ and Appeals Council "did not care" about SM.

### 1. The Alleged Prior Determinations of Disability for SM and/or Plaintiff

The fact that Plaintiff may have succeeded in obtaining disability benefits for herself has no bearing on whether her minor child is disabled.  As to Plaintiff's contention that the ALJ erred by failing to acknowledge a prior determination of disability *for SM*, the Commissioner expressly denies any such prior ruling and the record contains no evidence of such "letter."  The date of the alleged prior letter (January 2016) also conflicts with the fact that Plaintiff does not allege that SM became disabled until November 2016.[4]

### 2. SM's Mental Impairments do not Functionally Equal a Listing

Plaintiff argues that the ALJ erred by failing to appreciate that SM's mental health issues worsened over time.  She also asserts – without reference to any document of record – that SM has diagnoses of ADHD, bipolar disorder, and catatonic disorder.  The ALJ found only two severe mental impairments: ADHD and oppositional defiant disorder.  No evidence supports Plaintiff's assertion that her daughter suffers from additional impairments that were not considered by the ALJ.

The evidence of record also does not support a finding that SM's mental health impairment is so severe that it results in "marked" limitations in at least two domains or at least one "extreme" limitation, such that SM would be entitled to disability benefits.  To the contrary, the ALJ determined that SM has no limitations at all in two domains, and "less than marked" limitations in the remaining four domains.  (Tr. 14).

At the hearing, Plaintiff described SM's primary problem as "anger issues."  She testified that SM had problems at her school in sixth grade but had not had problems in seventh grade at the time of the hearing, and that SM's grades are generally good.  (Tr.

---

[4]The alleged January 2016 determination appears to be more likely related to Plaintiff's own claim.

6

15). SM testified that she gets good grades except for English and likes math, that she has friends at school, but has issues with anger and yells at friends, siblings, teachers and her mom. SM testified that she cries a lot when she gets mad. She testified that she gets in trouble at times when she yells at teachers but had not done that in seventh grade as of the date of the October 2019 hearing. Nevertheless, the ALJ took note of evidence that *after* the hearing, in November 2019, SM was suspended for 10 days for fighting, and her grades suffered. (Tr. 342).

Considering the record on the whole, however, the ALJ determined that "the allegations concerning the intensity, persistence and limiting effects of [SM's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 16). The ALJ obtained records from both Cheviot Elementary and from Dater High School. As of December 2019, SM had not been referred for assessment or special class placement or services, and had primarily A's and B's with 2 D's and 2 F's at the second semester mid-quarter.[5] SM has never been evaluated for any type of educational disability or required an IEP ("Individualized Education Plan") or a plan under Section 504 of the Rehabilitation Act of 1973 (often called a "540"). (Tr. 334). She has standardized test scores in the "average" range, and is regular education classes. (Tr. 16).

The ALJ acknowledged that SM's school records reflected "some" trouble, but did not find a "significant behavioral record or outbursts as [severe as] alleged." (Tr. 16). In fact, mental health records reflected that her conditions were "generally well managed with conservative, routine treatment." (*Id*.) The ALJ's analysis reflects an extremely thorough consideration of the record as a whole, including discussion of the

---

[5]As stated, the poor grades appear to have been related to SM's 10-day disciplinary suspension in November 2019. (*See* Tr. 16, discussing note from school counselor).

testimony and subjective reports of Plaintiff and SM, medical opinion evidence, school records, multiple mental status exams and other clinical records.

It is worth noting that no treating or non-treating source has ever opined that SM met or functionally equals any listing. In contrast, three medical sources support the ALJ's determination that she does not. In March 2018, psychologist Dr. Sexton examined SM and opined that she was able to understand information, could maintain attention, concentration, persistence or pace, had some difficulty relating to peers, and could perform self-care. (Tr. 238-44). In addition, two state agency consultants at the initial and reconsideration levels opined that SM's impairments did not functionally equal a listing. (Tr. 56-66, 69-78). The state agency consultants found no limitations at all in five of the six domains, and opined that SM has "less than marked" limitations in the single domain of health and physical well-being. (Tr. 61-62, 73-74). The ALJ found Dr. Sexton's opinion to be "somewhat persuasive" and found the non-examining consultants' opinions to be "persuasive" as "consistent with and supported by the information contained in the record at the time." (Tr. 20). In part based on their opinions, the ALJ found no limitations in SM's abilities in moving about and manipulating objects, and the ability to care for herself. However, after considering "additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level," the ALJ determined that SM has *some* limitations, albeit at the "less than marked" level, in a total of four domains. (*Id.*)

The ALJ's analysis is well-supported. At a number of routine visits, Plaintiff did not identify any problems with SM's behavior or mental/emotional difficulties. (Tr. 16). Despite the lack of reported difficulties, Plaintiff took SM for an initial mental health assessment on October 12, 2018, raising concerns about SM's attitude, mood swings,

8

and depression. (*Id*.) Thereafter, Plaintiff continued to take SM for mental health services through the date of the adverse decision.

On the whole, SM's records reflect mostly normal mental status findings despite some findings consistent with ADHD and ODD. The ALJ discussed all relevant records in detail, including the relatively few abnormal findings. (*See*, *e.g.*, Tr. 16-17 (discussing 10/12/18 findings of immature coping strategies and a lack of confidence in certain situations, overactive activity level, and some defiance with caregivers); Tr. 17 (discussing 6/27/19 report of defiance at home and status exam noting inconsistent affect; variable mood; limited memory; fair insight and judgment; variable focus); *Id*. (discussing 7/1/19 status exam showing poverty of thought processes; poor insight/judgment, but also noting that Plaintiff became hysterical when the provider suggested that SM's reported behavior was typical for her age); Tr. 17 (discussing similar findings on 7/16/19, including poverty of thought processes; poor insight/judgment); Tr. 18 (discussing 9/17/19 visit in which the provider changed SM's medication to Abilify after Plaintiff reported no improvement on Zoloft, with findings of poverty of thought processes; poor insight/judgment and tearful affect); *Id*. (discussing 10/31/19 visit in which Plaintiff reported that SM's outbursts had increased but that she was not physically aggressive, that SM was getting into more trouble, but that she had taken SM off Abilify because "it really wasn't working," and mostly normal mental status findings aside from poor insight/judgment and irritable affect).

After the 10/31/19 visit, the provider prescribed Latuda since Plaintiff had stopped SM's Abilify. (Tr. 18). However, at a January 16, 2020 visit, Plaintiff reported that SM was only taking half her medication due to confusion about the dosing. While Plaintiff reported no improvement on the half dose, she reported that SM previously had

9

improved when she was taking the whole tablet. And apart from her single 10-day suspension in November 2019, SM had not otherwise been in trouble at school. Her January 2020 mental status exam again reflected mostly normal findings, but for hyperactive cooperation, poor insight/judgment, poor attention and concentration. (*Id.*)

Based on the record presented, the ALJ reasonably determined that SM has "less than marked" limitations in four domains: acquiring and using information; attending and completing tasks; interacting and relating with others; and health and physical well-being. The ALJ further reasonably determined SM has no limitations at all in the domains of moving about and manipulating objects or caring for herself. (Tr. 14). Having carefully reviewed the entirety of the administrative record, the undersigned finds the ALJ's analysis and conclusion that SM does not "functionally equal" any listing to be more than substantially supported.

### 3. The ALJ Reasonably Assessed SM's Physical Impairments

In addition to SM's mental health issues, Plaintiff argues that SM suffers from two physical impairments: poor vision and an ankle injury. Again, however, the ALJ reasonably determined that neither condition functionally equals any listing, either alone or in combination with SM's other severe impairments.

Records show that SM was diagnosed with mild myopia at the onset of her alleged disability in November 2016, and was prescribed glasses at that time. (Tr. 18, 452). Plaintiff alleges that SM's vision is blurry and has worsened with time. However, the record does not support that SM suffers from poor vision when she wears her glasses. Instead, SM testified that her glasses correct her vision but that she chooses not to wear them at home in part because they give her headaches. (Tr. 15, 18, 49).

In December 2017, SM reported her glasses had broken six months previously. She was provided a new prescription with instructions to wear the glasses fulltime. (Tr. 19, 387-402, 451). However, SM reported wearing her glasses rarely in March 2019. (Tr. 525). SM's myopia had progressed by 0.25 OD and 0.25 OS since December 2017 so she received an updated prescription. SM reported mild and intermittent blurred vision in July 2019, stating that it had been present for months but was relieved by blinking. (Tr. 19, 634). But her corrected vision was essentially normal at 20/25 -3 OD and 20/20 OS. (*Id.*) In July 2019, SM reported worsening blurry vision but on examination, her corrected vision again was 20/20 in the left eye and 20/40 in the right eye with glasses. (Tr. 524). SM denied double vision, headaches, loss of vision, or other neurologic problems. (Tr. 19, 523-24). She reportedly enjoys using a Kindle and watching television. (Tr. 440). Based on the record as a whole, it was reasonable for the ALJ to reject the allegation that SM's vision worsened over time and/or was disabling.

Plaintiff testified that SM also continues to have difficulty with her left ankle since a 2017 fracture in which she was placed in a cast. (Tr. 15, 19). Follow-up treatment records reflect that SM healed well with her cast removed on July 27, 2017, at which time she was provided an ankle brace to wear. (*Id.*) Subsequent notes reflect that SM sprained the same ankle in October 2018. She underwent physical therapy which she completed in January 2019 after meeting her treatment goals. (*Id.*) At the hearing, SM testified that her ankle pains her "sometimes" such as when she walks to the bus stop (a 10-15 minute walk) but that it stops hurting when she sits down. Notwithstanding that testimony, there are no records of any ongoing complaints or treatment records after January 2019. Therefore, the ALJ reasonably rejected the allegation that the ankle

11

injury, alone or in combination with other impairments, resulted in any "marked" or "extreme" levels of impairment in any domain such that SM would be disabled.

### III. Conclusion and Recommendation

For the reasons discussed, the ALJ's analysis and non-disability determination are well supported by substantial evidence in the record as a whole. Therefore, **IT IS RECOMMENDED THAT** the ALJ's denial of SSI benefits for SM be **AFFIRMED** and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SHEENA J.,
on behalf of minor child, S.M.,   Case No. 1:21-cv-26

    Plaintiff                          Black, J.
                                   Bowman, M.J.
  v.


COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).